IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

03 FEB 28 AM 11: 09

DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **COOPER HOSIERY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action Number |
| vs. ) | 02-C-42-M |
| ) | |
| **RENFRO CORPORATION,** ) | |
| ) | |
| Defendant. ) | |

ENTERED

FEB 2 8 2003

**MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Cooper Hosiery ("Cooper" or "Plaintiff") brings this action against Defendant Renfro Corporation, ("Renfro" or "Defendant") to recover nearly one quarter million dollars worth of socks shipped by Plaintiff to Defendant. Cooper alleges that Renfro is liable for the value of the socks under theories of fraud and contract. Defendant Renfro has moved for summary judgment only with respect to Counts I, II and III of Plaintiff's Amended Complaint (Doc. 11). *See* Defendant's Brief, at p. 3. These counts are for fraudulent misrepresentation, fraudulent suppression and promissory fraud, respectively. Plaintiff's Count IV for breach of contract is not covered in Defendant's motion for summary judgment.

With respect to the fraud claims, Plaintiff has been unable to establish reliance, or that a false representation was made.

19

Therefore, summary judgment is due to be granted on Plaintiff's fraud claims.

## A. The Undisputed Facts[1]

1. Plaintiff Cooper, an Alabama corporation, is a manufacturer of socks.

2. For approximately fifteen years, Cooper regularly supplied socks to Candor Hosiery Mills.

3. Candor began experiencing financial distress and, as a result, Cooper required that Candor pay for the socks with cash prior to receipt. The prior practice had been to deliver the socks on credit.

4. In the Spring of 2000, Renfro considered purchasing Candor. As part of its due diligence investigation of the company, Renfro learned that Cooper had ceased extending credit to Candor and was withholding delivery of certain inventory ordered by Candor.

5. In April 2000, Mike Bowman, Senior Vice President of Operations at Renfro, met with Danny Hughes, Vice President of Cooper. Bowman sought to persuade Hughes to resume sock shipments to Candor, and to release the inventory that Cooper was holding. Hughes conditioned his agreement to the proposal on the condition that Renfro would guarantee Condor's indebtedness.. Bowman did not agree to the condition, and the meeting ended without an agreement.

6. Shortly after the meeting, Bowman called Hughes and repeated his request that Cooper

---

[1] "The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Ins. Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

resume dealings with Candor. Bowman averred that he was 90% certain that Renfro would ultimately acquire Candor. Hughes again refused the proposal in the absence of a guarantee from Renfro.

7. Several days later, Bowman called Hughes again. In the ensuing conversation, Bowman stated he was confident that Renfro would acquire Candor by June 1st; that Cooper should ship the socks to Candor; and that Renfro would guarantee payment for the shipment. Bowman promised to send Hughes a fax confirming Renfro's promise to guarantee payment for the socks.

8. On April 28, Cooper resumed its shipments to Candor.

9. On April 28, Bowman sent Hughes a facsimile. It states::

> As I indicated on the phone yesterday, Renfro feels at this point that the deal with Candor will go through. Our confidence level today is about 95%. We have a financial package put together and in every ones [sic] hands and we also have a new purchase agreement drafted and in the hands of the key players . . .. [W]e would like for you to resume shipments to Candor in the next couple of days. It would be nice if we could go back to regular terms of 37 days and ship accordingly as long as the balance is kept low. However, since I know that this poses somewhat of a risk for you and Mac, Renfro wants to assure you that the goods that you have for Target and Wal-Mart will be used in some capacity by one of the two companies, Candor or Renfro. We do not think that there is any risk to you at this point in time.

10. Unsatisfied with the communication's omission of the promised explicit guarantee, Hughes called Bowman and requested that the letter be revised to make the guarantee explicit. Bowman agreed to revise the letter. On Bowman's copy of the April 28 fax, below the sentence "We do not think that there is any risk to you at this time," Bowman handwrote the word

"Revise."

11. The same day that Hughes received the fax from Bowman, Cooper resumed sending socks to Candor. Cooper billed Candor for the socks, having relied on Renfro's guarantee.

12. On May 4, 2000, Bowman telephoned Hughes again. Bowman stated that Renfro's counsel had advised that rather than revise the fax, Cooper should invoice Renfro directly for the sock shipments. Hughes agreed.

13. Commencing on May 4, 2000, following the Bowman-Hughes agreement, Cooper billed Renfro directly for sock shipments sent to Candor.

14. Hughes then asked Candor to return the invoices sent to them for the April 28-May 4 shipments, so that they could be "reissued" and sent directly to Renfro.

15. The reissued invoices sent to Renfro indicated that the date of shipping was May 4, when in fact the date of shipment for the reissued invoices had been between April 28 and May 2.

16. Cooper continued to ship socks to Candor and the bills to Renfro until May 15. On that date, Bowman contacted Hughes and told him that Renfro's acquisition of Candor would not proceed.

17. Cooper immediately ceased shipments to Candor, and immediately returned to the cash-before-delivery policy.

18. Between April 28, 2000 and May 15, 2000, Cooper shipped to Candor $495,603.00 in socks. Between April 28 and May 4, it had shipped $246,763.80 - the goods for which the invoices were "reissued" to Renfro). Between May 4 and May 15, $248,839.20 in socks had been

shipped

19. Renfro paid Cooper the full amount owed on the shipments made between May 4 and May 15.

20. Renfro has refused to pay for the shipments from April 28 to May 4 on the basis that there was no agreement in place at prior to the May 4 agreement that Cooper ship to Candor and invoice Renfro.

21. This dispute involves the unpaid $246,763.80.

### B. Summary Judgment Standards

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for the motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Jones v. Sheehan, Young &*

*Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied sub. nom.*, 516 U.S. 817 (1995).

Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company,* 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. *Rooney v. Watson,* 101 F.3d 1378, 1380 (11th Cir. 1996) (citing *Hale v. Tallapoosa Co.,* 50 F.3d 1579, 1581 (11th Cir. 1995)).

### C. The Applicable Substantive Law

To recover on a claim of fraudulent misrepresentation, *see* § 6-5-101, Ala.Code 1975, a plaintiff must establish four elements: "(1) a false representation (2) concerning a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result." *Fisher v. Comer Plantation, Inc.*, 772 So.2d 455, 463 (Ala. 2000) (citing *Baker v. Bennett*, 603 So.2d 928, 935 (Ala. 1992)).

A plaintiff claiming promissory fraud must, in addition to proving the elements of fraud, prove that at the time of the misrepresentation, the defendant intended not to perform the act promised and intended to deceive the plaintiff. *Padgett v. Hughes*, 535 So.2d 140, 142 (Ala. 1988). "While the mere failure to perform the promised act is not by itself sufficient evidence of

fraudulent intent, for purposes of a promissory-fraud claim, 'the factfinder may consider that failure, together with other circumstances, in determining whether, at the time the promise was made, the promisor intended to deceive.'" *Ex parte Grand Manor, Inc.*, 778 So.2d 173, 182 (Ala.2000) (quoting *Murphy v. Droke*, 668 So.2d 513, 516 (Ala.1995)). A defendant's intent to deceive can be established through circumstantial evidence that relates to events that occurred after the alleged misrepresentations were made. *Vance v. Huff*, 568 So.2d 745, 750 (Ala.1990).

### D. Analysis

Plaintiff alleges first that "Renfro's commitment to guarantee payment on the goods was false." Count I, Amended Complaint, ¶ 11. Plaintiff next alleges that "Renfro suppressed the fact that it would not pay for all of the goods Cooper manufactured and shipped to Candor." Count II, ¶ 15. Plaintiff third cause of action is that Renfro represented that it would pay for the goods Cooper manufactured and shipped to Candor, that Renfro knew the representation was false, and that Renfro intended to deceive Plaintiff and had a present intent not to perform as represented. Count III, ¶¶ 20, 21.

Count I identifies Renfro's commitment to "guarantee payment" for the shipped goods as the false representation made and detrimentally relied upon by Cooper. However, it is clear that this is actually a claim for promissory fraud, and not for fraudulent misrepresentation. *See, e.g., Upton v. Drummond Co.*, 762 So.2d 373, 376 (Ala. Civ. App. 2000) (under Alabama law an alleged guarantee states a claim for promissory fraud, and requires that a plaintiff demonstrate the all four elements of a fraud claim, and the additional elements of defendant's intent not to perform the act promised, as well as defendant's intent to deceive). At issue is Renfro's promise to

perform in the future–if in fact Renfro had become a guarantor, their obligation would be to pay Cooper for socks shipped to Candor in the event of a default by Candor. Renfro's promise to pay as guarantor is not a "misrepresentation of an existing fact."

If Count I is viewed as a claim for promissory fraud, Plaintiff must show that Renfro intended to deceive Cooper at the time it "promised to guarantee payment." Plaintiff has presented the Court with no evidence from which such an intent could be inferred. Renfro would have had no reason to take on Candor's financial obligations otherwise. The fact that Renfro paid a substantial sum to Cooper for the shipments made between May 4 and May 15 supports the conclusion that Renfro had a good-faith intent to negotiate a payment scheme that would facilitate Cooper's continuing shipments of socks to Candor. In any event, Plaintiff certainly has adduced no evidence from which an intent to deceive and/or not perform on the part of Renfro can be reasonably inferred.

The factual dispute as to whether Bowman ever guaranteed payment of Candor's obligations (see Plaintiff's Brief, Doc. 18, pp. 11-12) is therefore immaterial to Plaintiff's fraud claims. Assuming, as we must, that Bowman such a representation, there is no evidence that Renfro intended to deceive Cooper, or that at the time of making the guarantee, Renfro did not intent to perform as "promised."[2]

---

[2]In fact, Renfro has a very persuasive argument that it could not have held such an intent, because Renfro believed that no agreement had yet been reached. After Renfro sent the fax to Cooper, Hughes expressly told Bowman that the language in the fax was inadequate. Bowman promised that he would revise the language. Renfro would be justified in believing that there would not be a contract until Renfro revised the objected-to language, and Cooper assented to the revision. On May 4, rather than revise the fax, Renfro proposed a different scheme, under which Renfro would act not as guarantor, but would be billed directly for the sock shipments to Candor. Upon Cooper's acceptance of the new proposed terms, Renfro was bound to pay Candor's obligations. Renfro

In addition, Plaintiff did not rely on Bowman's oral promise to guarantee payment. Cooper did not resume shipping goods to Candor until Hughes received the fax on April 28. Hughes immediately expressed his dissatisfaction with the "agreement" as represented by the fax. Bowman promised to revise the language. This demonstrates that, if anything, Hughes relied on Bowman's promise to revise the fax language in shipping to Candor. It was unreasonable for Hughes to have relied on the existence of a guarantor-agreement that he himself deemed unacceptable. Conversely, it is unreasonable to assume that Plaintiff actually relied on the "promise to guarantee."

The fraudulent suppression claim (Count II) is completely redundant. The only "fact" suppressed was Renfro's intent not to pay for part of the sock shipments. This is merely another way of stating the promissory fraud claim contained in Count III.

Count III for promissory fraud is simply a restatement of Plaintiff's Count I. Because Plaintiff's have not adduced any evidence of intent not to perform or intent to deceive on the part of Renfro, along with the fact that Plaintiff's reliance was not reasonable, Count III suffers the same fate as Counts I and II.

## Conclusion

Defendant's motion for partial summary judgment is due to be granted. Plaintiff's three fraud claims are essentially one single claim for promissory fraud, and are due to be dismissed with prejudice for the reasons outlined above; chiefly, (1) Plaintiff's complete failure to demonstrate *scienter* on Renfro's part, and (2) Plaintiff's inability to demonstrate reasonable

---

performed under the May 4 contract as promised.

reliance.

    These conclusions shall be embodied in a separate Order dismissing Counts I, II, and III..

    Done this 27th day of February, 2003.

                                             Chief United States District Judge
                                                 U.W. Clemon